## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| STEVE SEEMAN, derivatively on behalf of PAYPAL HOLDINGS, INC., | |
|     Plaintiff, | **C.A. No. _____** |
|     vs. | |
| DANIEL H. SCHULMAN, JOHN D. RAINEY, PATRICK L.A. DUPUIS, WENCES CASARES, JONATHAN CHRISTODORO, JOHN J. DONAHOE, DAVID W. DORMAN, GAIL J. MCGOVERN, DAVID M. MOFFETT, PIERRE M. OMIDYAR, and FRANK D. YEARY, | **DEMAND FOR JURY TRIAL** |
|     Defendants, | |
|     and | |
| PAYPAL HOLDINGS, INC., | |
|     Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Steve Seeman ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Nominal Defendant PayPal Holdings, Inc. ("PayPal" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Daniel H. Schulman, John D. Rainey, Patrick L.A. Dupuis, Wences Casares, Jonathan Christodoro, John J. Donahoe, David W. Dorman, Gail J. McGovern, David M. Moffett, Pierre M. Omidyar, and Frank D. Yeary (collectively, the "Individual Defendants") for breaches of their fiduciary duties as directors and/or officers of PayPal, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of Section 14(A) of the Securities Exchange Act of

1934 (the "Exchange Act"). As for his complaint against the Defendants, Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding PayPal, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by PayPal's directors and officers between July 1, 2015 and the present (the "Relevant Period").

2.     PayPal is a technology company that enables mobile and digital payments on behalf of merchants and consumers.  The Company's technology platform enables customers, including individuals and businesses of varying size, to pay and get paid, hold balances in their respective PayPal accounts, and transfer and withdraw funds from their PayPal accounts to their own bank accounts.

3.     PayPal was acquired in 2002 by eBay Inc. ("eBay"), a multinational e-commerce corporation facilitating online consumer-to-consumer and business-to-consumer sales.

4.     In 2013, PayPal acquired Braintree, a payment service provider that owns Venmo. Venmo offers mobile payment service that allows users to transfer money between one another

using a mobile phone app or web interface.  Through the 2013 transaction, PayPal became the parent of Venmo.

5.      On September 30, 2014, it was announced that PayPal would be spun off into a separate publicly traded company.  Venmo, now a service of PayPal, was part of this spinoff. Per the terms of the spinoff completed in July 2015, for every one share of eBay common stock held by the close of business on July 8, 2015, each holder of eBay common stock would receive one share of PayPal common stock.

6.      During the Relevant Period, the Individual Defendants caused and allowed the Company, through Venmo, to engage in trade practices that were unfair and/or deceptive and that were likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny, including that of the Federal Trade Commission (the "FTC") and the Texas Attorney General's Office (the "Unfair and Deceptive Trade Practices").

7.      During the Relevant Period, the Individual Defendants also personally made and/or caused the Company to make a series of materially false and/or misleading statements regarding the Company's business, operations, prospects and legal compliance.  Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  As a result of the foregoing, the Company's public statements referenced herein were materially false and misleading at all relevant times.

8.     The truth began to emerge on April 28, 2016 when PayPal filed its quarterly report on Form 10-Q with the SEC disclosing that the FTC had issued a Civil Investigative Demand ("CID") to the Company to investigate and ultimately determine whether PayPal, through Venmo, violated the Federal Trade Commission Act by engaging in unfair or deceptive practices.  The FTC's investigation has not yet been completed, upon information and belief.

9.     On April 28, 2016, the price per share of Company stock was $40.07 at the close of market.  On April 29, 2016, the day after PayPal filed the Form 10-Q, the Company's stock price fell $0.89 per share or 2.2% to close at $39.18 per share.

10.     On May 20, 2016, the Texas Attorney General's Office announced a settlement with PayPal in connection with PayPal's violations of the Texas Deceptive Trade Practices Act. The announcement by the Texas Attorney General's Office stated:

> Attorney General Ken Paxton today announced a settlement with PayPal Inc. regarding its Venmo mobile phone application ("app"). This agreement resolves the state's legal action against PayPal, which since 2013 has been the parent company of Venmo, a popular money transfer application and social network that allows users to electronically pay others by using linked bank accounts or credit cards.
>
> "Innovation in payment processing technology benefits consumers throughout Texas," Texas Attorney General Ken Paxton said. "However, it is important that businesses remain aware of the potential consequences regarding their users' privacy and security so that they can better protect consumers."
>
> The Texas Attorney General's Consumer Protection Division conducted an investigation for potential violations of the Texas Deceptive Trade Practices Act (DTPA) and found a number of issues regarding the safety and security of the Venmo app. According to investigators, Venmo used consumers' phone contacts without clearly disclosing how the contacts would be used, did not clearly disclose how consumers' transactions and interactions with other users would be shared, and misrepresented that communications from Venmo were actually from particular Venmo users. As a result, consumers may have publicly exposed private information regarding their payments. In January 2016 alone, Venmo processed $1 billion in transactions.

> As part of its settlement, PayPal agrees that its Venmo app will improve disclosures to consumers regarding privacy and security. Paypal also agrees to better inform users of the safeguards available on its app, and ensure consumers understand who will be able to view their transaction information. The settlement also includes a payment of $175,000 to the State of Texas.

11.     After the truth was exposed on April 28, 2016, the Company's stock price dropped 14.6% in the following two months, closing at $34.20 per share on June 27, 2016.

12.     Due to the artificial inflation of the Company's stock price caused by the foregoing misrepresentations, certain Individual Defendants profited handsomely from their engagement in insider sales of Company stock.

13.     In light of the Individual Defendants' misconduct, which has subjected PayPal, its President and Chief Executive Officer ("CEO"), its Senior Vice President and Chief Financial Officer ("CFO"), its Senior Vice President and Former CFO, its Chairman of its Board of Directors, its former Company director, and eBay to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Northern District of California (the "Federal Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, the settlement payment made to the State of Taxes, the losses from the waste of corporate assets, including from defending the Company from the FTC and Texas Attorney General investigations, the losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and/or who benefitted from the wrongdoing alleged herein, including through insider transactions, the Company will have to expend many millions of dollars.

14.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and certain Individual Defendants' liability in the Federal Securities Class Action, their being beholden to each other, their longstanding business and personal relationship with each other, and their not being disinterested and/or independent directors, a majority of the Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, raise a federal question pertaining to the claims made in the Federal Securities Class Action based on violations of the Exchange Act, and raise a federal question pertaining to the claims made in the FTC CID based on violations of the Federal Trade Commission Act.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

17.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

18.     Venue is proper in this District because PayPal is incorporated in this District. In addition, the Defendants have conducted business in this District, and Defendants actions have had an effect in this District.

## PARTIES

### Plaintiff

19.     Plaintiff is a current shareholder of PayPal.  Plaintiff has continuously held

PayPal common stock since PayPal was spun off from eBay in July 2015 and received his shares

as a result of the spinoff.

### Nominal Defendant PayPal

20.     PayPal is a Delaware corporation with its principal executive offices at 2211

North First Street, San Jose, California 95131.  PayPal's shares trade on the NASDAQ under the

ticker symbol "PYPL."

### Defendant Schulman

21.     Defendant Daniel H. Schulman ("Schulman") has served as the Company's

President and CEO, and as a Company director, since July 2015.  According to the 2016 Proxy

Statement, as of April 4, 2016, Defendant Schulman beneficially owned 242,702 shares of the

Company's common stock.  Given that the price per share of the Company's common stock at

the close of trading on April 4, 2016 was $38.79, Schulman owned over $9.4 million worth of

PayPal stock.

22.     The Company's Schedule 14A filed with the SEC on April 14, 2016 (the "2016

Proxy Statement"), stated the following about Defendant Schulman:

> **Biography**[1]
> Mr. Schulman has served as President and Chief Executive Officer of
> PayPal since July 2015. He had served as the President and CEO-Designee
> of PayPal from September 2014 until July 2015. From August 2010 to
> August 2014, Mr. Schulman served as Group President, Enterprise Group
> of American Express Company, a financial services company. Mr.
> Schulman was President, Prepaid Group of Sprint Nextel Corporation, a
> cellular phone service provider, from November 2009 until August 2010,
> when Sprint Nextel acquired Virgin Mobile, USA, a cellular phone service

---

[1] Emphasis contained in original unless otherwise noted.

provider. Mr. Schulman also serves on the Board of Directors of Flextronics International Ltd. and Symantec Corporation.

Mr. Schulman received a B.A. from Middlebury College and a MBA from New York University's Leonard N. Stern School of Business.

**Experience, Skills and Qualifications of Particular Relevance to PayPal**

Mr. Schulman's extensive industry experience and knowledge of PayPal's day-to-day operations, as well as his previous managerial experience in the payments and technology industries enables Mr. Schulman to provide valuable perspectives on many issues facing PayPal, particularly with respect to business management and strategy. Mr. Schulman's service on the Board creates an important link between management and the Board and provides PayPal with decisive and effective leadership.

**Defendant Rainey**

23.     Defendant John D. Rainey ("Rainey") has served as the Company's Senior Vice President and CFO since August 2015.

24.     The Company's 2016 Proxy Statement stated the following about Defendant Rainey:

> Mr. Rainey commenced employment with PayPal in August 2015 as our Senior Vice President, Chief Financial Officer. Pursuant to the terms of his offer letter, in recognition of the forfeited bonus payment from and forfeited equity awards with his former employer, Mr. Rainey received a "make-good" cash payment equal to $4,150,000 on March 4, 2016, which had been subject to his continued employment with PayPal through the payment date. Further, pursuant to the terms of his offer letter, in recognition of his forfeited equity awards with his former employer, Mr. Rainey will receive a second "make-good" cash payment equal to $2,000,000 on or around February 28, 2017, subject to his continued employment with PayPal through the payment date. These "make-good" payments are subject to a clawback, should Mr. Rainey's employment be terminated for cause or should he resign without good reason prior to the second anniversary of his date of employment.

**Defendant Dupuis**

25.     Defendant Patrick L.A. Dupuis ("Dupuis") served as the Company's interim CFO from July 2015 to August 2015.  According to the 2016 Proxy Statement, as of April 4, 2016,

Defendant Dupuis beneficially owned 94,103 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 4, 2016 was $38.79, Dupuis owned over $3.6 million worth of PayPal stock.

**Defendant Casares**

26.    Defendant Wences Casares ("Casares") has served a Company director since January 2016.  Defendant Casares is a member of the Company's Compensation Committee.

27.    The Company's 2016 Proxy Statement stated the following about Defendant Casares:

> **Biography**
> Mr. Casares has served as a director of PayPal since January 2016. He is the Founder of Xapo Inc., a bitcoin wallet and vault startup, and has served as its Chief Executive Officer since March 2014. From October 2011 to March 2014, Mr. Casares was Founder and Chief Executive Officer of Lemon Inc., a digital wallet platform. From March 2007 to October 2011, Mr. Casares was Co-Chief Executive Officer of Bling Nation Ltd., a mobile payments platform. He also serves on the Board of Directors of Kiva.org and Endeavor Global, Inc.
>
> **Experience, Skills and Qualifications of Particular Relevance to PayPal**
> Mr. Casares's unique line of sight into the future of commerce and payment technologies is ideally aligned with PayPal's vision of transforming the management and movement of money for people around the globe.

**Defendant Christodoro**

28.    Defendant Jonathan Christodoro ("Christodoro") has served as a Company director since July 2015.  Defendant Christodoro is a member of the Company's Compensation Committee.   He previously served as an eBay director from March 2015 to July 2015.  According to the 2016 Proxy Statement, as of April 4, 2016, Defendant Christodoro beneficially owned 1,642 shares of the Company's common stock.  Given that the price per share of the

Company's common stock at the close of trading on April 4, 2016 was $38.79, Christodoro owned over $63,693 worth of PayPal stock.

29.     The Company's 2016 Proxy Statement stated the following about Defendant Christodoro:

> **Biography**
> Mr. Christodoro has served as a director of PayPal since July 2015. He was previously a board member of eBay from March 2015 to July 2015. Mr. Christodoro has served as a Managing Director of Icahn Capital LP, the entity through which Carl C. Icahn manages investment funds, since July 2012. Prior to joining Icahn Capital, Mr. Christodoro served in various investment and research roles at P2 Capital Partners, LLC from March 2007 to July 2012. Mr. Christodoro began his career as an investment banking analyst at Morgan Stanley, where he focused on merger and acquisition transactions across a variety of industries. Mr. Christodoro also serves on the Board of Directors of American Railcar Industries, Inc., Cheniere Energy, Inc., Enzon Pharmaceuticals, Inc., Herbalife Ltd., and Lyft, Inc.
>
> Mr. Christodoro received an M.B.A from the University of Pennsylvania's Wharton School of Business. Mr. Christodoro received a B.S. in Applied Economics and Management Magna Cum Laude from Cornell University. Mr. Christodoro also served in the United States Marine Corps.
>
> **Experience, Skills and Qualifications of Particular Relevance to PayPal**
> Mr. Christodoro has over 15 years of extensive financial, strategic and investment experience advising and investing in public companies, including at the board level.

**Defendant Donahoe**

30.     Defendant John J. Donahoe ("Donahoe") has served as the Company's Chairman of the Board since July 2015.  He previously served as eBay's President and CEO from March 2008 to July 2015 and as an eBay director from January 2008 to July 2015.  According to the 2016 Proxy Statement, as of April 4, 2016, Defendant Donahoe beneficially owned 503,655 shares of the Company's common stock.  Given that the price per share of the Company's

common stock at the close of trading on April 4, 2016 was $38.79, Donahoe owned over $19.5 million worth of PayPal stock.

31.    The Company's 2016 Proxy Statement stated the following about Defendant Donahoe:

> **Biography**
> Mr. Donahoe has served as Chairman of the PayPal Board since July 2015. He served as the President and Chief Executive Officer of eBay from March 2008 to July 2015, and a director from January 2008 to July 2015. From January 2012 until April 2012, Mr. Donahoe served as Interim President of the PayPal business. From January 2008 to March 2008, Mr. Donahoe served as CEO-designate of eBay. From March 2005 to January 2008, Mr. Donahoe served as President, eBay Marketplaces. From January 2000 to February 2005, Mr. Donahoe served as the Worldwide Managing Director of Bain & Company. Mr. Donahoe also serves on the Board of Directors of Intel Corporation and Nike, Inc.
>
> Mr. Donahoe received his B.A. in Economics from Dartmouth College and an M.B.A. from the Stanford Graduate School of Business.
>
> **Experience, Skills and Qualifications of Particular Relevance to PayPal**
> Mr. Donahoe brings extensive industry experience and deep knowledge of PayPal's day-to-day operations based on his former role as director, President and Chief Executive Officer of eBay and previous managerial experience as Interim President of the PayPal business.

32.    During the period of time when the Company materially misstated information to keep the stock price inflated, and before the scheme was exposed, Defendant Donahoe made the following sales of Company stock (and made no purchases of Company stock).  On July 27, 2015, Defendant Donahoe sold 380,543 shares of Company stock for $36.95 per share.  On July 31, 2015, Defendant Donahoe sold 764,453 shares of Company stock for $38.59 per share.  On August 5, 2015, Defendant Donahoe sold 507,251 shares of Company stock for $39.45 per share. On August 10, 2015, Defendant Donahoe sold 103,461 shares of Company stock for $39.20 per share.  On November 5, 2015, Defendant Donahoe sold 21,486 shares of Company stock for

$37.14 per share.  On November 20, 2015, Defendant Donahoe sold 53,390 shares of Company stock for $36.25 per share.  Thus, before the fraud was exposed, he sold 1,830,584 Company shares on inside information, for which he received over $70.3 million.  His insider sales, made with knowledge of material non-public information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the fraud.

**Defendant Dorman**

33.     Defendant David W. Dorman ("Dorman") has served as a Company director since June 2015.  Defendant Dorman is also the Chair of the Company's Compensation Committee and a member of the Company's Governance Committee.  He previously served as an eBay director from June 2014 to July 2015.  According to the 2016 Proxy Statement, as of April 4, 2016, Defendant Dorman beneficially owned 13,163 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 4, 2016 was $38.79, Dorman owned over $510,592 worth of PayPal stock.

34.     The Company's 2016 Proxy Statement stated the following about Defendant Dorman:

> **Biography**
> Mr. Dorman has served as a director of PayPal since June 2015. He previously served as a board member of eBay from June 2014 to July 2015. Mr. Dorman has been the Non-Executive Chairman of the Board of CVS Health Corporation, a pharmacy healthcare provider, since May 2011, and is the former Chairman and Chief Executive Officer of AT&T Corporation a telecommunications company (formerly known as SBC Communications Inc.). He is also Founding Partner of Centerview Capital, a private investment firm, since July 2013. He was formerly Non-Executive Chairman of the Board of Motorola Solutions, Inc. (formerly Motorola, Inc.), a leading provider of business and mission critical communication products and services for enterprise and government customers. He served as Non-Executive Chairman of the Board of Motorola, Inc. from May 2008 until the separation of its mobile devices and home businesses in January 2011. From October 2006 to May 2008, he was a Senior Advisor and Managing Director to Warburg Pincus LLC, a global private equity firm. From November 2005 until January 2006, Mr.

Dorman served as President and a director of AT&T Corporation. From November 2002 until November 2005, Mr. Dorman was Chairman of the Board and Chief Executive Officer of AT&T Corporation. Prior to this, he was President of AT&T Corporation from 2000 to 2002 and the Chief Executive Officer of Concert Communications Services, a former global venture created by AT&T Corporation and British Telecommunications plc, from 1999 to 2000. Mr. Dorman also serves on the Board of Directors of Yum! Brands, Inc. and as a Trustee for Georgia Tech Foundation, Inc.

Mr. Dorman received his B.S. in industrial management from Georgia Institute of Technology.

**Experience, Skills and Qualifications of Particular Relevance to PayPal**
Mr. Dorman's leadership as former Chairman and Chief Executive Officer of AT&T Corporation and his extensive experience in global telecommunications-related businesses as a former Chief Executive Officer, as well as expertise in finance, strategic planning and public company executive compensation adds to the strong leadership expertise of the board.

### Defendant McGovern

35.     Defendant Gail J. McGovern ("McGovern") has served as a Company director since June 2015.  She is the Chair of the Company's Governance Committee and a member of the Company's Audit Committee.  She previously served as an eBay director from March 2015 to July 2015.

36.     The Company's 2016 Proxy Statement stated the following about Defendant McGovern:

**Biography**
Ms. McGovern has served as a director of PayPal since June 2015. She previously served as a board member of eBay from March 2015 to July 2015. Ms. McGovern is the President and Chief Executive Officer of the American Red Cross, a humanitarian organization, and has served in that position since June 2008. From 2002 to 2008, Ms. McGovern served as a Professor at Harvard Business School. Ms. McGovern also served as President of Fidelity Personal Investments, a unit of Fidelity Investments from 1998 to 2002 and Executive Vice President of the Consumer Markets Division at AT&T Corporation from 1997 to 1998. Ms. McGovern also

serves as a trustee of John Hopkins Medicine, and a director of DTE Energy Company.

Ms. McGovern received her B.A. in quantitative sciences from Johns Hopkins University and her M.B.A. from Columbia University.

**Skills and Qualifications of Particular Relevance to PayPal**
Ms. McGovern's leadership experience as President and Chief Executive Officer of the American Red Cross adds to the strong leadership expertise of the board and brings a strong perspective from the academic and nonprofit worlds and her extensive executive experience in marketing and sales, customer relations, corporate finance, strategic planning and government relations and knowledge of regulatory matters adds depth to the Board.

### Defendant Moffett

37.    Defendant David M. Moffett ("Moffett") has served as the Company's Lead Independent Director since June 2015.  He is the Chair of the Company's Audit Committee. Defendant Moffett previously served as an eBay director from July 2007 to July 2015. According to the 2016 Proxy Statement, as of April 4, 2016, Defendant Moffett beneficially owned 67,546 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 4, 2016 was $38.79, Moffett owned over $2.6 million worth of PayPal stock.

38.    The Company's 2016 Proxy Statement stated the following about Defendant Moffett:

**Biography**
Mr. Moffett has served as a director of PayPal since June 2015 and as Lead Independent Director since July 2015. He was previously a board member of eBay from July 2007 to July 2015. Mr. Moffett served as Chief Executive Officer of Federal Home Loan Mortgage Corp. ("Freddie Mac") from September 2008 until his retirement in March 2009. He also served as a director of Freddie Mac from December 2008 to March 2009. In 1993, Mr. Moffett joined Star Banc Corporation, a bank holding company, as Chief Financial Officer and during his tenure played an integral role in the acquisition of Firstar Corporation in 1998 and later U.S. Bancorp in 2001. Mr. Moffett remained Chief Financial Officer of U.S. Bancorp until

2007. Mr. Moffett also serves on the Board of Directors of CIT Group Inc., Genworth Financial, Inc. and as a Trustee for Columbia Atlantic Mutual Funds and University of Oklahoma Foundation and as a consultant to various financial services companies.

Mr. Moffett received a B.A. from the University of Oklahoma and an M.B.A. from Southern Methodist University.

**Experience, Skills and Qualifications of Particular Relevance to PayPal**

Mr. Moffett has more than 30 years of strategic finance, risk management, and operational experience in banking and payment processing. He brings this strong financial expertise to his role on the Board and as the Chair of the Audit Committee. He also has extensive global financial management and regulatory expertise as a former Chief Executive Officer and Chief Financial Officer of financial services companies. Mr. Moffett has extensive experience in the payments business as a result of his involvement with the development of U.S. Bancorp's global expansion of its merchant processing business, which is particularly relevant to PayPal's business. Mr. Moffett's leadership experience as Chief Executive Officer of Freddie Mac adds to the strong leadership expertise of the Board.

39.     During the period of time when the Company materially misstated information to keep the stock price inflated, and before the scheme was exposed, Defendant Moffett made the following sales of Company stock (and made no purchases of Company stock).  On February 1, 2016, Defendant Moffett sold 15,971 shares of Company stock for $36.08 per share.  His insider sales, made with knowledge of material non-public information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the fraud.

**Defendant Omidyar**

40.     Defendant Pierre M. Omidyar ("Omidyar") has served as a Company director since July 2015.  Defendant Omidyar is the founder of eBay and has served as an eBay director since May 1996 and as eBay's Chairman of the board from May 1996 to July 2015.  According to the 2016 Proxy Statement, as of April 4, 2016, Defendant Omidyar beneficially owned

82,124,658 shares of the Company's common stock, which was about 6.8% of the Company's

issued and outstanding common stock.  Given that the price per share of the Company's common

stock at the close of trading on April 4, 2016 was $38.79, Omidyar owned over $3.1 billion

worth of PayPal stock.

41.    The Company's 2016 Proxy Statement stated the following about Defendant

Omidyar:

> **Biography**
> Mr. Omidyar has served as a director of PayPal since July 2015. He
> founded eBay in September 1995 and has served as a board member of
> eBay since May 1996, and as Chairman of the eBay board from May 1996
> to July 2015. He is the Founding Partner and Chairman of Omidyar
> Network, a philanthropic investment firm committed to creating
> opportunity for individuals to improve their lives, and Co-Founder, Chief
> Executive Officer, and Publisher of Civil Beat, an online news service
> formed in 2010. Mr. Omidyar is also the founder, Chief Executive Officer
> and publisher of First Look, a mass media news organization established
> in 2013. Mr. Omidyar serves on the Board of Trustees of Omidyar-Tufts
> Microfinance Fund, the Punahou School, Santa Fe Institute, and the
> Roshan Cultural Heritage Institute.
>
> Mr. Omidyar received a B.S. from Tufts University.
>
> **Experience, Skills and Qualifications of Particular Relevance to
> PayPal**
> Mr. Omidyar has extensive experience as a technologist and innovator.
> His industry knowledge and long history of driving innovation provides
> important expertise to PayPal. As the founder of eBay Mr. Omidyar brings
> to the board of directors a deep understanding of the business and a long-
> standing history as a leader within the technology industry. In addition to
> eBay, Mr. Omidyar has also been a founder of several other innovative
> businesses, including the Omidyar Network and First Look. His extensive
> experiences as an entrepreneur are particularly relevant to our nimble,
> fast-changing business.

**Defendant Yeary**

42.    Defendant Frank D. Yeary ("Yeary") has served as a Company director since July

2015.  Defendant Yeary is a member of the Company's Audit Committee.  He previously served

as an eBay director from January 2015 to July 2015. According to the 2016 Proxy Statement, as

of April 4, 2016, Defendant Yeary beneficially owned 1,749 shares of the Company's common

stock. Given that the price per share of the Company's common stock at the close of trading on

April 4, 2016 was $38.79, Yeary owned over $67,843 worth of PayPal stock.

43. The Company's 2016 Proxy Statement stated the following about Defendant

Yeary:

> **Biography**
> Mr. Yeary has served as a director of PayPal since July 2015. He previously served as a board member of eBay from January 2015 to July 2015. Mr. Yeary has been Executive Chairman of CamberView Partners, LLC, a corporate advisory firm, since 2012. Mr. Yeary was Vice Chancellor of the University of California, Berkeley, a public university, from 2008 to 2012, where he led and implemented major strategic and financial changes to the university's financial and operating strategy; from 2010 to 2011, he served as interim Chief Administrative Officer, managing a portfolio of financial and operational responsibilities and departments. Prior to 2008, Mr. Yeary spent 25 years in the finance industry, most recently as Managing Director, Global Head of Mergers and Acquisitions and a member of the Management Committee at Citigroup Investment Banking, a financial services company. Mr. Yeary also serves on the Board of Directors of Intel Corporation.
>
> Mr. Yeary received his B.A. in History and Economics from the University of California, Berkeley.
>
> **Experience, Skills and Qualifications of Particular Relevance to PayPal**
> Mr. Yeary's extensive career in investment banking and finance brings to the Board financial strategy and mergers and acquisitions expertise, including expertise in financial reporting and experience in assessing the efficacy of mergers and acquisitions. In addition, Mr. Yeary's role as Vice Chancellor and as Chief Administrative Officer of a large public research university provides strategic and financial expertise.

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

44. Each officer and director of PayPal owes to the Company and its shareholders the

highest obligations of fair dealing, and the fiduciary duty to exercise good faith and diligence in

the administration of the Company and its services and in the use and preservation of its assets and property.

45. The Individual Defendants owed PayPal and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to manage and control PayPal in a just, equitable, fair, and honest manner due to their ability to control the corporate and business affairs of PayPal and its services and also because of their positions as directors, officers, and/or fiduciaries of the Company. Moreover, in a manner that benefits all shareholders equally, the Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

46. Due to their positions of authority and control as officers and/or directors of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the misconduct and wrongful acts outlined herein.

47. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of PayPal, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised PayPal's Board at all relevant times.

48.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

49.     The directors and officers of the Company were required to exercise prudent and reasonable supervision over the practices, policies, operations, internal controls, and management of the Company and its services in order to properly and adequately discharge their duties.  To that end, and by virtue of such duties, the directors and officers of the Company were required to, *inter alia*:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to PayPal's own Code of Conduct;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how PayPal conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make

reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)      establish and maintain systematic and accurate records and reports of the business and internal affairs of PayPal and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)      maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that PayPal's operations would comply with all applicable laws and PayPal's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)      exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)      refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)      examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

50.      Each of the Individual Defendants further owed to PayPal and the shareholders the duty of loyalty requiring that each favor PayPal's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

51.     At all times relevant hereto, the Individual Defendants were the agents of each other and of PayPal and were at all times acting within the course and scope of such agency.

52.     Because of their advisory, executive, managerial, and directorial positions with PayPal, each of the Individual Defendants had access to adverse, non-public information about the Company.

53.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by PayPal.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

54.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein and engage in the Unfair and Deceptive Trade Practices.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

55.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider transactions, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of Section 14(a) of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects and internal controls; (iii) to artificially inflate the Company's stock price while certain Individual Defendants engaged in lucrative insider sales; and (iv) to cause the Company to engage in the Unfair and Deceptive Trade Practices.

56.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws, including by engaging in the Unfair and Deceptive Trade Practices. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of PayPal was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

57.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

58.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of PayPal, and was at all times acting within the course and scope of such agency.

## PAYPAL'S CODE OF BUSINESS CONDUCT & ETHICS

59.     Pursuant to the Company's Code of Business Conduct & Ethics (the "Code of Conduct"), available on its website, www.paypal.com, "[o]ur Code of Business Conduct & Ethics provides guidance on how we should conduct our business for the benefit of ourselves, our colleagues, our Company, our customers, our suppliers and our stockholders.

60.     The Code of Conduct provides, as to "Compliance With The Law," that: "We are accountable for our actions and we honor our commitments.  Our shared goal of honest and ethical action in everything we do drives our success.  We are committed to ensuring that every action we take is in full compliance with the law – and in keeping with our ethics."

61.     The Code of Conduct provides, as to "Making Ethical Decisions," that:

> When you face difficult decisions at PayPal, take the time to think and consider the legal and ethical issues. Don't give in to pressure and rush your decision. Carefully consider the implications of your actions. Always ask:
>
> • Is it honest and fair?
>
> • Is it consistent with the Code and the law?
>
> • Does it make you feel good about yourself and the Company?
>
> • Would you feel comfortable reading about your action if it is reported in the media?

62.     The Code of Conduct provides, as to "Accurate Accounts and Records," that:

> We have an obligation to our business, stockholders and others who rely on us, to ensure that our accounts and records are always complete, accurate, timely, and understandable. These records are critical for internal decision making, and for reporting to government agencies and the market. Accurate records protect our reputation for integrity.
>
> This means that we never falsify, forge, backdate, or improperly alter any Company document. We ensure that all transactions are lawful, recorded in the proper account, and in accordance with all Company internal controls. All reports to regulatory authorities must be full, fair, accurate, timely and understandable.

63.     The Code of Conduct provides, as to "Privacy," that:

> Customers who entrust us with their personal information expect us to protect their privacy. Privacy matters at PayPal. We all must be focused on our customers, compliance and doing the right thing. Depending on your job responsibilities you may have access to our customers' personal data, including their contact details, financial account information and transaction data. We must safeguard our customers' information. We

collect, access, use, store, transfer and share our customers' information only for legitimate business purposes, and always in accordance with our privacy and information security policies and applicable laws, rules and regulations, including data protection laws. In particular, PayPal has made commitments to data protection regulators in Europe that we, globally, will comply with certain binding rules designed to protect our Users' Personal Information.

We do not share customer information with third parties, or any colleague who doesn't have a business need to know. If there is a legitimate business need to share confidential information with a third party, they must first enter into an appropriate legal agreement, with confidentiality, privacy and security provisions, approved by the PayPal Legal and Privacy Teams.

If you have any questions contact the Privacy Team at askprivacy@paypal.com or visit Data Protection/Privacy

64. The Code of Conduct provides, as to "Advertising and Marketing," that:

Every claim in our advertisements and marketing materials must be accurate, objective and verifiable. This means that we must research and document our claims prior to publication. Laws governing comparative advertising, including pricing, vary from country to country, so it's important to obtain guidance from Legal when making such claims to ensure that we comply with applicable laws.

Advertising and marketing using social media also is subject to various regulations. Please consult our Social Media Policy and Legal for more information.

We do not make false or misleading claims. Legal can provide guidance if you are unsure whether something is false or misleading.

65. The Code of Conduct provides, as to "Public Statements and Endorsements," that:

We speak with one voice when communicating about PayPal to the media, financial analysts, or investors. Inaccurate statements can create serious risks for the Company, including claims of false advertising, misrepresentation, breach of contract, securities fraud and antitrust violations.

All public statements and endorsements or information about PayPal, our products, or our business prospects must be coordinated and approved in advance with Corporate Communications. Information related to the Company's financial performance must be directed to Investor Relations.

In dealing with the news media, whether by phone, email, over the Internet or in person, you must follow these guidelines:

- Always direct any reporter or member of the media to the PayPal Public Relations (PR) team to mediarelations@paypal.com;

- Unless already designated as a corporate spokesperson, do not accept a media interview without prior approval from Corporate Communications;

- If approached by a reporter, assume you are on the record and what you say can be used in a story;

- If a reporter is pushing for a response on a subject that you don't know about, it's okay to say: "This isn't my area of expertise, but I'm happy to put you in touch with someone from Corporate Communications."

- Do not disclose proprietary information regarding future products/ features, internal policies or other information to the media or our customers; and

- Be friendly, energetic and courteous at all times.

66.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' schemes, including the scheme to engage in the Unfair and Deceptive Trade Practices and issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider transactions, waste of corporate assets, unjust enrichment, abuse of control, gross mismanagement, and violations of Section 14(A) of the Exchange Act.   In violation of the Code of Conduct, the Individual Defendants consciously disregarded their duties of loyalty, ethics, and to act in the best interests of the Company.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### BACKGROUND

67.     PayPal operated as a subsidiary of eBay from 2002 to 2015, and acquired Venmo during this time in 2013.   During the time PayPal was operated by eBay, and prior to the Relevant Period, eBay made substantially the same statements with regard to Venmo's compliance with applicable laws and regulations to the investing public as the misleading statements and omissions of material fact set forth below that were made by the Individual Defendants and/or that they caused the Company to make.   In July 2015, PayPal, and consequently its Venmo service, was spun off from eBay and its shares began trading on the NASDAQ on July 20, 2015.

**THE UNFAIR AND DECEPTIVE TRADE PRACTICES**

68.     During the Relevant Period, the Individual Defendants, in breach of their fiduciary duties to PayPal, caused the Company, through Venmo, to engage in the Unfair and Deceptive Trade Practices.   At least certain of the Unfair and Deceptive Trade Practices included Venmo's use of consumers' phone contacts without clearly disclosing how the contacts would be used, failure to clearly disclose how consumers' transactions and interactions with other users would be shared, and misrepresentations that communications from Venmo were actually from particular Venmo users.   The Unfair and Deceptive Trade Practices subjected the Company to separate investigations by the FTC and the Texas Attorney General's Office.

69.     On May 20, 2016, the Texas Attorney General's Office announced a settlement with PayPal in connection with PayPal's violations of the Texas Deceptive Trade Practices Act. The Texas Attorney General's earlier investigation revealed a number of issues regarding the safety and security of PayPal's Venmo service and raised the concern that consumers have publicly exposed private information regarding their payments through using Venmo.

70.     As part of its settlement with the Texas Attorney General's Office, PayPal agreed to improve disclosures to consumers regarding the security of its Venmo service and agreed to a payment of $175,000 to the State of Texas.

71.     According to the Company's annual report on Form 10-K filed with the SEC on February 8, 2017 for the year ended December 31, 2016, the FTC's investigation has not yet been completed.

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

### July 29, 2015 Form 10-Q

72.     On July 29, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the second quarter ended June 30, 2015 ("2Q 2015 10-Q"), which was signed by Defendants Schulman and Dupuis.

73.     In the 2Q 2015 10-Q, the Individual Defendants caused the Company to make false and misleading statements of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  Instead, the Company stated, with regard to Venmo's legal and regulatory compliance:

> We are subject to various laws and regulations in the United States and other countries where we operate . . . .
>
> PayPal, Inc. has obtained licenses to operate as a money transmitter (or its equivalent) in the United States, in the states where it is required, and the District of Columbia, the U.S. Virgin Islands and Puerto Rico. Our subsidiary, Venmo, is also licensed as a money transmitter in certain U.S. states. As licensed money transmitters, PayPal and Venmo are subject to restrictions with respect to their investment of customer funds, reporting requirements, bonding requirements and inspection by state regulatory agencies. Accordingly, we could be subject to liability and/or additional

restrictions, forced to cease doing business with residents of certain states, forced to change our business practices or be required to obtain additional licenses or regulatory approvals that could impose substantial cost if we violate these laws or regulations.

74.     Attached to the 2Q 2015 10-Q were certifications pursuant to Rule 13a-14(a) and 15d-14(a) of the Exchange Act, Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), and 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sox, ("SOX Certifications"), signed by Defendants Schulman and Dupuis, attesting to the accuracy of the 2Q 2015 10-Q.

**October 29, 2015 Form 10-Q**

75.     On October 29, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the third quarter ended September 30, 2015 ("3Q 2015 10-Q"), which was signed by Defendants Schulman and Rainey.

76.     In the 2Q 2015 10-Q, the Individual Defendants caused the Company to make false and misleading statements of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  Instead, the Company stated, with regard to Venmo's legal and regulatory compliance:

> We are subject to various laws, rules and regulations in the United States and other countries where we operate . . . .
>
> In the United States, PayPal, Inc. has obtained licenses to operate as a money transmitter (or its equivalent) in the states where it is required, as well as in the District of Columbia, the U.S. Virgin Islands and Puerto Rico. Our subsidiary, Venmo, is also licensed as a money transmitter in certain U.S. states, and acts as an authorized delegate and agent of PayPal in the states where Venmo is not directly licensed. As licensed money transmitters, PayPal and Venmo are subject to restrictions with respect to their investment of customer funds, reporting requirements, bonding requirements and inspection by state regulatory agencies. Accordingly, if

> we violate these laws or regulations, we could be subject to liability and/or additional restrictions, forced to cease doing business with residents of certain states, forced to change our business practices or be required to obtain additional licenses or regulatory approvals that could impose substantial costs.

77.     Attached to the 3Q 2015 10-Q were SOX Certifications signed by Defendants Schulman and Rainey, attesting to the accuracy of the 3Q 2015 10-Q.

**February 11, 2016 Form 10-K**

78.     On February 11, 2016, the Company filed an annual report on Form 10-K with the SEC for the year ended December 31, 2015 ("2015 10-K"), which was signed by Defendants Schulman, Rainey, Casares, Christodoro, Donahoe, Dorman, McGovern, Moffett, Omidyar, and Yeary.

79.     In the 2015 10-K, the Individual Defendants caused the Company to make false and misleading statements of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  Instead, the Company stated, with regard to Venmo's legal and regulatory compliance:

> In the United States, PayPal, Inc. has obtained licenses to operate as a money transmitter (or its equivalent) in the states where it is required, as well as in the District of Columbia, the U.S. Virgin Islands and Puerto Rico. This license includes not only the PayPal branded products and services in these states, but also our Venmo branded products and services. Our subsidiary, Xoom, is also licensed as a money transmitter in certain U.S. states. As licensed money transmitters, PayPal and Xoom are subject to restrictions with respect to their investment of customer funds, reporting requirements, bonding requirements and inspection by state regulatory agencies. Accordingly, if we violate these laws or regulations, we could be subject to liability and/or additional restrictions, forced to cease doing business with residents of certain states, forced to change our

business practices or be required to obtain additional licenses or regulatory approvals that could impose substantial costs.

80.     Attached to the 2015 10-K were SOX Certifications signed by Defendants Schulman and Rainey, attesting to the accuracy of the 2015 10-K.

**April 14, 2016 Proxy Statement**

81.     On April 14, 2016, the Company filed its 2016 Proxy Statement.  In the 2016 Proxy Statement, the Individual Defendants caused the Company to make false and misleading statements of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  With regard to PayPal's own corporate governance, the Company made false and misleading statements by stating, in relevant part:

> The Board of Directors (the "Board" or the "PayPal Board") of PayPal Holdings, Inc. (the "Company", "PayPal", "we", or "us") is committed to good corporate governance. We believe that good corporate governance promotes the long-term interests of our stockholders, strengthens Board and management accountability, and engenders public trust. The Board is responsible for providing advice and oversight of the strategic and operational direction of the Company and overseeing its executive management to support the long-term interests of the Company and its stockholders.
>
> . . . .
>
> We are committed to having strong governance standards with respect to our compensation programs and practices. Consistent with this focus, we have the following programs and practices that we believe are mindful of the concerns of our stockholders and governance best practices.

82.     The Individual Defendants also caused the 2016 Proxy Statement to be false and misleading in that they stated that the Company utilizes a "Pay For Performance" principle to

compensate executives and that such compensation is subject to a clawback policy.  PayPal's clawback policy states:

> Our clawback policy is applicable to each officer employed as a Vice President or in a more senior position, and permits the Committee to require forfeiture or reimbursement of incentive compensation, which includes any cash incentive award, equity award, or equity-based award paid or awarded to any covered employee during the period in which he or she is designated as a covered employee, if (i) an action or omission by the covered employee constitutes a material violation of the Code of Business Conduct; or (ii) an action or omission by the covered employee results in material financial or reputational harm to the Company. In addition, for covered employees that are employed as a senior vice president or in a more senior position or as a vice president who is a member of the finance function, the following event is also covered: a material restatement of all or a portion of the Company's financial statements that is the result of a supervisory or other failure by the covered employee.

83.     Indeed, the Company's officers named herein as Individual Defendants should have been required to forfeit or reimburse part or all of their compensation because, through their actions alleged herein, they violated the Code of Conduct and committed acts or omissions that resulted "in material financial or reputational harm to the Company."  Upon information and belief, such clawbacks have yet to occur.  Additionally, due to the actions of the Individual Defendants outlined herein, they were improperly being "paid for their performance." Moreover, the misconduct outlined herein, including the dissemination of the materially false and misleading statements and engagement in the Unfair and Deceptive Trade Practices, reveals that the Individual Defendants failed to practice and/or uphold sound corporate governance practices.  Thus, the foregoing statements made in the Company's 2016 Proxy Statement were false and misleading with respect to material facts.

**THE TRUTH EMERGES**

**April 28, 2016 Form 10-Q**

84.     On April 28, 2016, the Company filed a quarterly report on Form 10-Q with the SEC for the first quarter ended March 31, 2016 ("1Q 2016 10-Q"), which was signed by Defendants Schulman and Rainey.  In the 1Q 2016 10-Q, the Company revealed that the FTC had issued a CID to PayPal to determine whether, through its Venmo service, it had engaged in deceptive or unfair practices in violation of the Federal Trade Commission Act.  The 1Q 2016 10-Q stated, in relevant part:

> On March 28, 2016, we received a Civil Investigative Demand ("CID") from the Federal Trade Commission ("FTC") as part of its investigation to determine whether we, through our Venmo service, have been or are engaged in deceptive or unfair practices in violation of the Federal Trade Commission Act.  The CID requests the production of documents and answers to written questions related to our Venmo service. We are cooperating with the FTC in connection with the CID.  The CID could lead to an enforcement action and/or one or more consent orders, which may result in substantial costs, including legal fees, fines, penalties, and remediation expenses and actions, and could require us to change aspects of the manner in which we operate Venmo.

85.     On April 28, 2016, the price per share of Company stock was $40.07 at the close of market.  On April 29, 2016, the day after the filing of the April 28, 2016 Form 10-Q (which was filed after the market closed), the price per share of Company stock was $39.18 at the close of market.

**May 20, 2016 Texas Attorney General Announcement**

86.     On May 20, 2016, the Texas Attorney General's Office announced the results of an investigation into PayPal and its Venmo service for potential violations of the Texas Deceptive Trade Practices Act.  The announcement by the Texas Attorney General's Office stated:

> Attorney General Ken Paxton today announced a settlement with PayPal Inc. regarding its Venmo mobile phone application ("app"). This agreement resolves the state's legal action against PayPal, which since 2013 has been the parent company of Venmo, a popular money transfer

application and social network that allows users to electronically pay others by using linked bank accounts or credit cards.

"Innovation in payment processing technology benefits consumers throughout Texas," Texas Attorney General Ken Paxton said. "However, it is important that businesses remain aware of the potential consequences regarding their users' privacy and security so that they can better protect consumers."

The Texas Attorney General's Consumer Protection Division conducted an investigation for potential violations of the Texas Deceptive Trade Practices Act (DTPA) and found a number of issues regarding the safety and security of the Venmo app. According to investigators, Venmo used consumers' phone contacts without clearly disclosing how the contacts would be used, did not clearly disclose how consumers' transactions and interactions with other users would be shared, and misrepresented that communications from Venmo were actually from particular Venmo users. As a result, consumers may have publicly exposed private information regarding their payments. In January 2016 alone, Venmo processed $1 billion in transactions.

As part of its settlement, PayPal agrees that its Venmo app will improve disclosures to consumers regarding privacy and security. Paypal also agrees to better inform users of the safeguards available on its app, and ensure consumers understand who will be able to view their transaction information. The settlement also includes a payment of $175,000 to the State of Texas.

87.     On June 27, 2016, the stock price dropped further to close at $34.20 per share.

88.     The statements referenced in ¶¶ 72-82 above were materially false and misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business, operations, prospects, and legal compliance, which were known to the Individual Defendants or recklessly disregarded by them.   In breach of their fiduciary duties owed to PayPal, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the

guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.  As a result of the foregoing, the Company's public statements referenced herein were materially false and misleading at the times that they were made.

## SUMMARY OF INDIVIDUAL DEFENDANT'S WRONGFUL CONDUCT

89.     In breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company's above-alleged internal control failures, and caused or allowed the Company's Unfair and Deceptive Trade Practices (which ultimately led the Company to become the subject of various actions and investigations as alleged herein), and willfully or recklessly caused or permitted the Company to make the false and misleading statements and omissions of material fact to the investing public as set forth above.

90.     Specifically, the Individual Defendants caused and allowed the Company, through Venmo, to engage in the Unfair and Deceptive Trade Practices. The Individual Defendants also failed to take any actions to stop the wrongful conduct and eventually exposed the Company to substantial liabilities, including those arising from the investigation conducted by the FTC and the Texas Attorney General's Office.

91.     The Individual Defendants further willfully or recklessly made and/or caused the Company to make false and misleading statements of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.

92.     Additionally, while the Individual Defendants caused the Company's stock to be artificially inflated, certain Individual Defendants benefitted themselves by engaging in insider sales.

93.     In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting.

## DAMAGES TO PAYPAL

94.     As a direct and proximate result of the Individual Defendants' conduct, PayPal will lose and expend many millions of dollars.

95.     Such expenditures include, but are not limited to, legal fees associated with the Federal Securities Class Action filed against the Company and certain of the Individual Defendants and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

96.     Such costs include, but are not limited to, the costs incurred in connection with the FTC and Texas Attorney General investigations and the settlement payment the Company made to the State of Texas.

97.     Additionally, these expenditures include, but are not limited to, lavish compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

98.     As a direct and proximate result of the Individual Defendants' conduct, PayPal has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their

misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

99.     Plaintiff brings this action derivatively and for the benefit of PayPal to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of PayPal, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, violation of Section 14(A) of the Exchange Act, as well as the aiding and abetting thereof.

100.     PayPal is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

101.     Plaintiff is, and has been since the Relevant Period began, a shareholder of PayPal.  Plaintiff will fairly and adequately represent the interests of PayPal in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

102.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

103.     A pre-suit demand on the Board of PayPal is futile and, therefore, excused.  At the time of filing of this action, the Board consists of the following nine Individual Defendants: Defendants Schulman, Casares, Christodoro, Donahoe, Dorman, McGovern, Moffett, Omidyar, and Yeary (collectively, the "Directors").  Plaintiff needs only to allege demand futility as to five of the nine directors who are on the Board at the time this action is commenced.

104.    Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the schemes they engaged in knowingly or recklessly to cause and/or allow the Company to engage in the Unfair and Deceptive Trade Practices and to make false and misleading statements and omissions of material facts concerning PayPal's core operations, while two of the Directors engaged in insider sales, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

105.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in the conduct alleged herein.  The fraudulent scheme was intended to make the Company appear more stable, profitable, and attractive to investors.  While investors were duped into believing the fraud perpetrated by the Individual Defendants, two of the Individual Defendants collectively sold over $70 million worth of Company stock at artificially inflated prices based on material inside information.  As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

106.    Additional reasons that demand on Defendant Schulman is futile follow.  Defendant Schulman is the Company's President and CEO.  This is his primary occupation.  He is, as the Company admits, a non-independent Director.  His large Company stock holding, worth over $9.4 million before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible.  He receives lavish compensation, including $14,444,491 in 2015.  Defendant Schulman is also a defendant in the Federal Securities Class Action.  Defendant Schulman conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements

and/or omissions of material fact (he signed all the aforementioned SEC filings), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Thus, for these reasons, too, Defendant Schulman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

107.    Additional reasons that demand on Defendant Donahoe is futile follow. Defendant Donahoe's primary occupation was as eBay's President and CEO, prior to the Company's spinoff from eBay.  In this prior role, he received lavish compensation.  As a current Director, he also receives lavish compensation, and was entitled to receive at least $500,000 in 2016 per the 2016 Proxy Statement.  He is, as the Company admits, a non-independent Director. His large Company stock holding, worth over $19.5 million before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Donahoe's insider sales before the fraud was exposed, which yielded over $70.3 million in proceeds, demonstrate his motive in facilitating and participating in the fraud.  Defendant Donahoe is also a defendant in the Federal Securities Class Action.  Defendant Donahoe conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Donahoe breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

108.     Additional reasons that demand on Defendant Casares is futile follow.   He receives lavish compensation, and was entitled to receive at least $300,000 in 2016 per the 2016 Proxy Statement.   Defendant Casares conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.   Thus, for these reasons, too, Defendant Casares breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

109.     Additional reasons that demand on Defendant Christodoro is futile follow.   He receives lavish compensation, and was entitled to receive at least $300,000 in 2016 per the 2016 Proxy Statement.   His large Company stock holding, worth over $63,693 before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Christodoro conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.   Thus, for these reasons, too, Defendant Christodoro breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

110.     Additional reasons that demand on Defendant Dorman is futile follow.   He receives lavish compensation, and was entitled to receive at least $328,000 in 2016 per the 2016 Proxy Statement.   His large Company stock holding, worth over $510,592 before the fraud was

exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Dorman conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Thus, for these reasons, too, Defendant Dorman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

111.    Additional reasons that demand on Defendant McGovern is futile follow.  She receives lavish compensation, and was entitled to receive at least $318,000 in 2016 per the 2016 Proxy Statement.   Defendant McGovern served as a member of the Audit Committee during the Relevant Period.  The Audit Committee Charter states:

> The [Audit Committee] shall provide assistance and guidance to [the Board] in fulfilling its oversight responsibilities to the Company's stockholders with respect to (i) the Company's corporate accounting and financial reporting practices, (ii) the independent auditor's qualifications and independence, (iii) the performance of the Company's internal audit function and independent auditors, (iv) the quality and integrity of the Company's financial statements and reports, (v) reviewing and approving all audit engagement fees and terms, as well as all non-audit engagements with the independent auditors, (vi) producing the report that the rules of the [SEC] require to be included in the Company's annual proxy statement, (vii) overseeing the Company's overall risk framework and risk appetite framework and (viii) the Company's compliance with legal and regulatory requirements. In discharging these obligations, the Committee shall maintain and foster an open avenue of communication between the Committee and the independent auditors, the Company's financial management and internal auditors.

112.    The Audit Committee failed to maintain proper internal controls and permitted the Individual Defendants and PayPal to engage in the misconduct alleged herein, including the issuance of false and misleading statements to the public and the engagement in the Unfair and

Deceptive Trade Practices.   Therefore, as a member of the Audit Committee, Defendant McGovern breached her fiduciary duties.   She conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (she signed the 2015 10-K), consciously disregarded her duties to monitor engagement in the scheme, and consciously disregarded her duties to protect corporate assets.   Thus, for these reasons, too, Defendant McGovern breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

113.   Additional reasons that demand on Defendant Moffett is futile follow.   He receives lavish compensation, and was entitled to receive at least $315,000 in 2016 per the 2016 Proxy Statement.   His large Company stock holding, worth over $2.6 million before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Moffett's insider sales before the fraud was exposed demonstrate his motive in facilitating and participating in the fraud.   Defendant Moffett served as Chair of the Audit Committee during the Relevant Period.   The Audit Committee failed to maintain proper internal controls and permitted the Individual Defendants and PayPal to engage in the misconduct alleged herein, including the issuance of false and misleading statements to the public and engagement in the Unfair and Deceptive Trade Practices.   Therefore, as Chair of the Audit Committee, Defendant Moffett breached his fiduciary duties.   Defendant Moffett conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets.   Thus, for these reasons, too, Defendant

Moffett breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

114.    Additional reasons that demand on Defendant Omidyar is futile follow.  His large Company stock holding, worth over $3.1 billion before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Omidyar conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Omidyar breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

115.    Additional reasons that demand on Defendant Yeary is futile follow.  He receives lavish compensation, and was entitled to receive at least $318,000 in 2016 per the 2016 Proxy Statement.  His large Company stock holding, worth over $67,843 before the fraud was exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Yeary served as a member of the Audit Committee during the Relevant Period.  The Audit Committee failed to maintain proper internal controls and permitted the Individual Defendants and PayPal to engage in the misconduct alleged herein, including the issuance of false and misleading statements to the public and engagement in the Unfair and Deceptive Trade Practices.  Therefore, as a member of the Audit Committee, Defendant Yeary breached his fiduciary duties.  Defendant Yeary conducted little, if any, oversight of the Company's engagement in the Unfair and Deceptive Trade Practices and scheme to make false and misleading statements and/or omissions

of material fact (he signed the 2015 10-K), consciously disregarded his duties to monitor engagement in the scheme, and consciously disregarded his duties to protect corporate assets. He also conducted little, if any, oversight of the Company's purchases of its own stock at artificially inflated prices, which resulted in the Company overpaying more than $10 million during the Relevant Period for such purchases.  Thus, for these reasons, too, Defendant Yeary breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

116.   Additional reasons why demand on the Board is futile, follow.

117.   Defendants Schulman, Christodoro, Donahoe, Dorman, McGovern, Moffett, Omidyar, and Yeary were all previously officers and/or board members of PayPal or eBay at all relevant times when PayPal was still a subsidiary of eBay.  Therefore, eight of the nine Directors were responsible for the misconduct even prior to the beginning of the Relevant Period and thus face an even more substantial likelihood of liability.  Thus, any demand on the Directors would be futile.

118.   Demand in this case is excused because the Directors, who are named as defendants in this action, control the Company and are beholden to each other. The Directors have longstanding business and personal relationships with each other and the Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders.  In fact, eight of the nine directors have a previous relationship through eBay's prior ownership of PayPal.  These conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

119.     Moreover, the demand in this case is excused because the Directors violated the Code of Conduct.  In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the schemes alleged herein, including the schemes to issue materially false and misleading statements to the public, engage in the Unfair and Deceptive Trade Practices, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, insider transactions, waste of corporate assets, unjust enrichment, abuse of control, gross mismanagement, and violations of Section 14(A) of the Exchange Act.  In violation of the Code of Conduct, the Individual Defendants consciously disregarded their duties of loyalty, ethics, and to act in the best interests of the Company.

120.     PayPal has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for PayPal any part of the damages PayPal suffered and will continue to suffer thereby.  Thus, any demand on the Directors would be futile.

121.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct.  Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists).  As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

122.    The acts complained of herein constitute violations of fiduciary duties owed by PayPal's officers and directors, and these acts are incapable of ratification.

123.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of PayPal.  If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion."  As a result, if the Directors were to sue themselves or certain of the officers of PayPal, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery.  Thus, demand on the Directors is futile and, therefore, excused.

124.    If there is no directors' and officers' liability insurance, then the Directors will not cause PayPal to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability.  Accordingly, demand is futile in that event, as well.

125.    Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, certainly at least five of the Directors, cannot consider a demand with disinterestedness and independence.  Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against Individual Defendants for Violations of
### Section 14(A) of the Securities Exchange Act of 1934

126.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

127.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

128.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

129.    Under the direction and watch of the Directors, the 2016 Proxy Statement failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.

130.    The Individual Defendants also caused the 2016 Proxy Statements to be false and misleading in that they failed to disclose that their "pay for performance" compensation structure resulted in improper payments to its executives in light of the Individual Defendants and

Company's misconduct during the Relevant Period, and that it was not adhering to its clawback policy.

131.    Moreover, the 2016 Proxy Statement omitted (and was therefore false and misleading) that the Individual Defendants failed to practice and/or uphold sound corporate governance practices pursuant to its own Code of Conduct.

132.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2016 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2016 Proxy Statement, including but not limited to, election of directors, approval of officer compensation, and appointment of an independent auditor.

133.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2016 Proxy Statement.

## SECOND CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

134.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

135.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of PayPal's business and affairs.

136.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

137.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The

Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of PayPal.

138.   In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting.

139.   In breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company to engage in the Unfair and Deceptive Trade Practices.

140.   In further breach of their fiduciary duties owed to PayPal, the Individual Defendants willfully or recklessly caused the Company to make false and misleading statements and omissions of material fact.   Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose that: (1) Venmo was engaging in trade practices that were unfair and/or deceptive; and (2) the revelation to the public of Venmo's unfair and/or deceptive trade practices while being under the guidance and control of PayPal was likely to affect the success and prospects of Venmo and/or subject PayPal to increased regulatory scrutiny.   As a result of the foregoing, the Company's public statements referenced herein were materially false and misleading at the times that they were made.   The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

141.   The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

48

Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of PayPal's securities and disguising insider transactions.

142.   The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls.   The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.   Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of PayPal's securities and engaging in insider transactions.

143.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

144.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, PayPal has sustained and continues to sustain significant damages.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

145.   Plaintiff on behalf of PayPal has no adequate remedy at law.

### THIRD CLAIM

**Against Individual Defendants for Unjust Enrichment**

146.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

147.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, PayPal.

148.     The Individual Defendants either benefitted financially from the improper conduct and their engaging in lucrative insider transactions and received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from PayPal that was tied to the performance or artificially inflated valuation of PayPal, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

149.     Plaintiff, as a shareholder and a representative of PayPal, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits–including from insider transactions, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

150.     Plaintiff on behalf of PayPal has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Abuse of Control

151.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

152.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence PayPal, for which they are legally responsible.

153.     As a direct and proximate result of the Individual Defendants' abuse of control, PayPal has sustained significant damages.  As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, PayPal has

sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

154.     Plaintiff on behalf of PayPal has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants for Gross Mismanagement

155.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

156.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of PayPal in a manner consistent with the operations of a publicly-held corporation.

157.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, PayPal has sustained and will continue to sustain significant damages.

158.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

159.     Plaintiff, on behalf of PayPal, has no adequate remedy at law.

## SIXTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

160.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

161.     As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused PayPal to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to

defend unlawful actions, to engage in internal investigations, to respond to the FTC and Texas Attorney General's respective investigations, to settle with the State of Taxes, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

162.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

163.    Plaintiff on behalf of PayPal has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of PayPal, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to PayPal;

(c)    Determining and awarding to PayPal the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing PayPal and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect PayPal and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1.    a proposal to strengthen the Board's supervision of operations and develop

and implement procedures for greater shareholder input into the policies and guidelines of the board;

    2.  a provision to permit the shareholders of PayPal to nominate at least five candidates for election to the board; and

    3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

    (e)    Awarding PayPal restitution from Individual Defendants, and each of them;

    (f)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

    (g)    Granting such other and further relief as the Court may deem just and proper.


Dated: March 24, 2017

Of Counsel:

Timothy W. Brown
**THE BROWN LAW FIRM, P.C.**
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Fax: (516) 344-6204
tbrown@thebrownlawfirm.net

Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*